Brent O. Hatch (5715)
 bhatch@hjdlaw.com
HATCH, JAMES, & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:	(801) 363-6363
Facsimile:	(801) 363-6666

James D. Herschlein (pro hac vice)
 jherschlein@kayescholer.com
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Telephone:	(212) 836-8000
Facsimile:	(212) 836-8689

*Attorneys for Lutron Electronics Co., Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| LUTRON ELECTRONICS CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC., a New Jersey corporation, FACE GROUP, INC. D/B/A LIFESTYLE ELECTRONICS, a Utah corporation, LAVA CORP., a Utah corporation, AUDIO VISION SYSTEMS, LLC, a Utah limited liability company,<br><br>Defendants. | **EXPEDITED MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN LLP AND REVOKE ASSOCIATED PRO HAC VICE STATUS IN THIS CASE**<br><br>Case: 2:09-cv-707<br><br>Judge:  Dee Benson |

Plaintiff Lutron Electronics Co., Inc. ("Lutron"), by its undersigned counsel, hereby files this Expedited Motion to Disqualify Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and Revoke Associated Pro Hac Vice Status in this Case.  Given the nature of the

Motion, Lutron asks the Court to order expedited briefing and give the matter expedited consideration.

**INTRODUCTION**

The Utah Rules of Professional Conduct are straightforward in addressing conflicts of interest. "A lawyer who has formally represented a client in a matter shall not thereafter represent another person in the same or a substantially similar matter in which that person's interests are materially adverse to the interests of the former client . . . ." Utah R. Prof'l Conduct 1.9(a). Moreover, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so." *Id.* 1.10(a). This is true because "each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." *Id.* cmt. 2.

Despite these straightforward rules, Quinn Emanuel has ignored an obvious and serious conflict of interest that prevents it from acting adversely to Lutron in this matter. Specifically, Quinn Emanuel employs Joshua S. Reisberg as a patent litigation attorney in its New York City offices. Mr. Reisberg is a member of that firm's intellectual property and patent litigation group, (Boglioli Decl. at ¶ 17), which is headed by Mr. Edward De Franco, Creston's new lead counsel in this matter. But Mr. Reisberg has not always worked for Quinn Emanuel -- he previously was an associate at one of plaintiff Lutron's outside litigation firms.

**Mr. Reisberg's Significant Representation of Lutron**

In 2006, Lutron Electronic Co., Inc. hired the law firm of Kaye Scholer LLP to represent it regarding issues related to Lutron's U.S. Patent 5,905,442 (the "'442 patent") and U.S. Patent 5,982,103 (the "'103 patent") (collectively the "RF Patents") – the same RF Patents that are at issue in the present litigation against Crestron. (Boglioli Decl. at ¶ 3). Specifically, Kaye Scholer

performed work on behalf of Lutron in the following cases, each of which involved the same RF Patents:

- *Lutron Electronics Co., Inc. v. Leviton Manufacturing Co., Inc.,* Civil Action No. 9:07-CV-43, in the United States District Court for the Eastern District of Texas Lufkin Division;

- *Lutron Electronics Co., Inc. v. Leviton Manufacturing Co., Inc.,* Civil Action No. 9:07-CV-96, in the United States District Court for the Eastern District of Texas, Lufkin Division;

- *Lutron Electronics Co., Inc. v. Leviton Manufacturing Co., Inc.,* Civil Action No. 9:07-CV-97, in the United States District Court for the Eastern District of Texas, Lufkin Division (all three cases against Leviton in the Eastern District of Texas are collectively referred to as the "Leviton Cases");

- *In the Matter of Certain Lightning Control Devices Including Dimmer Switches and/or Switches* before the United States International Trade Commission in Washington, D.C. (against Leviton and Control4) (the "ITC Case"); and

- *Lutron Electronics Co., Inc. v. Control4 Corporation,* Civil Action No. 2:06-CV-00401, in the United States District Court for the District of Utah (the "Control4 Case") (all litigations are collectively referred to as the "Prior Litigations").

(*Id.*).

Mr. Reisberg, an associate at Kaye Scholer from September 2006 through September 2009, was an integral member of Kaye Scholer's Lutron team. (Boglioli Decl. at ¶¶ 5-10). Mr. Reisberg was one of two associates in charge of Lutron's document review efforts in the Leviton and ITC Cases and participated in some of the most sensitive aspects of those litigations, including:

- participating in meetings, including with Lutron's in-house counsel, regarding Lutron's litigation strategy, its analysis of its patents, and settlement of the Prior Litigations;

- developing a document review strategy for Lutron's documents;

- addressing issues that arose during the document review of Lutron's documents;

iii

- reviewing and analyzing Lutron's highly confidential and privileged documents containing Lutron's work product and attorney-client privileged information; and

- coordinating the preparation of Lutron's privilege log.

(Boglioli Decl. at ¶¶ 5-9).

When Lutron collected documents in connection with the Prior Litigations, it also collected and reviewed documents regarding Crestron and its products. (Boglioli Decl. at ¶ 4). And Mr. Reisberg was the attorney who reviewed for production and privilege the files of Lutron's legal and patent departments, including the files of Lutron's in-house counsel, its in-house patent attorneys and patent agents, its consulting engineers and the files of the inventors for the '442 and '103 patents. (Boglioli Decl. at ¶ 8).

Mr. Reisberg's significant role in representing Lutron in the Leviton and ITC Cases is evident from his time records, which reflect that he billed 571.15 hours to Lutron between January 31, 2007 through August 14, 2007 for his work in connection with the Leviton and ITC Cases. (Boglioli Decl. at ¶ 9).

Mr. Reisberg left Kaye Scholer, and joined Quinn Emanuel's New York patent litigation group, in September 2009. (Boglioli Decl. at ¶ 17).

**The Prior Litigations and This Case Are Substantially Related**

It is clear that Mr. Reisberg's representation of Lutron in the Leviton and ITC cases is substantially related to this case. First, this litigation and the Prior Litigations involved the same two key RF Patents owned by Lutron. Indeed, the cases on which Mr. Reisberg worked are so closely entwined with the present action that Crestron itself has requested "[a]ll pleadings, transcripts, written discovery, and court filings" from the Prior Litigations. (Boglioli Decl. at

¶ 12 and Exhibit 2, Defendants' First Set of Requests for Production of Documents and Things, Request No. 33). Moreover, as already mentioned, the documents collected and reviewed in the Prior Litigations included documents regarding Crestron's products. (Boglioli Decl. at ¶ 4).

Second, Mr. Reisberg's work for Lutron *is being used in this litigation*. The Protective Order entered by this Court, Docket Number 73, recognized that Lutron would be relying on the document designations and review that Lutron prepared in the Prior Litigations -- designations that Mr. Reisberg himself performed:

> Lutron has already produced in prior litigation in this District and elsewhere documents relevant to this action that have been marked "LUTRON CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER" and similar marks. Such documents, if produced in this action, shall not require remarking prior to production. . . .

Dkt. 73 at ¶ 5(b); Boglioli Decl. at ¶ 13. Thus, any challenge by Crestron in this case of the confidentiality or privilege designations of any Lutron documents, will likely be a challenge of Mr. Reisberg's designations.

Third, Crestron was subpoenaed in the Control4 Case, and Mr. Daniel Feldstein, Vice-President of Operations for Crestron, provided deposition testimony for Control4 against Lutron in the Control4 Case. (Boglioli Decl. at ¶ 16).

Fourth, Control4's General Counsel provided notice to Lutron, pursuant to its license agreement, that it believes Crestron is infringing the same patents that Crestron licensed from Lutron - and that were the subject of the Prior Litigations. Control4 requested either that Lutron commence suit against Crestron or provide its reasons for not doing so. (Boglioli Decl. at ¶ 17).

### Quinn Emanuel's Recent Appearance In This Case

The parties in this case have recently commenced document review and production, and it was at this point that Crestron, who for almost a year had been represented by New Jersey and Utah counsel,[1] suddenly (and for no obvious reason) hired Quinn Emanuel. Although Quinn Emanuel clearly began its consultation with Crestron weeks (if not months) earlier, Quinn Emanuel entered its appearance in this case on July 12, 2010.[2]

Quinn Emanuel began its representation of Crestron without disclosing the obvious conflict of interest that Mr. Reisberg—and therefore the entire firm—has under Rules 1.9 and 1.10 of the Utah Rules of Professional Conduct. At no time did Quinn Emanuel notify Lutron of its conflict, in writing (as required) or otherwise. Nor did Quinn Emanuel establish a screen or chinese wall when it commenced its representation of Crestron.

Lutron did not learn of Quinn Emanuel's conflict of interest until the week of August 2, 2010. By letter dated August 5th, Lutron's counsel contacted Edward DeFranco, the Co-Chair of Quinn Emanuel's intellectual property litigation practice and new lead counsel for Crestron. (Boglioli Decl. at ¶ 18 and Exhibit 6). Although Lutron requested that Quinn Emanuel withdraw, Quinn Emanuel has refused to do so. Tellingly, although Quinn Emanuel has denied that Mr. Reisberg is "now" working on the Crestron matter, it conceded that it did not have an "ethical wall" or screen in place until well after the conflict arose, and only after Lutron raised the conflict

---

[1] Crestron is currently represented by Utah counsel Ray Quinney & Nebeker, and has been represented by its New Jersey counsel, Sills Cummis & Gross as lead counsel since the onset of the litigation a year ago. Interestingly, while the parties have been discussing this matter with Quinn Emanuel, Crestron, today, and in anticipation of this motion, filed an Application to Withdraw the representation of Sills Cummis & Gross. Dkt. 74. That application should be denied and should not have any impact on the present motion.

[2] *See* Motion for Pro Hac Admission (Edward DeFranco) Dkt. 67.

– when it was too late. (Boglioli Decl. at ¶ 19 and Exhibit 7). Quinn Emmanuel further did not deny that this conflict had not been disclosed to Lutron.

In short, Creston has added to its legal team an attorney who spent several hundred hours reviewing Lutron's confidential and privileged information. It then failed to inform Lutron of its conflict of interest and failed to take any precautions to prevent the disclosure of Lutron's confidential information -- only addressing the obvious conflict after Lutron raised the issue. Despite Mr. Reisberg's and Quinn Emanuel's direct and obvious conflicts of interest, Quinn Emanuel remains actively involved as lead counsel in this case for Crestron -- directly adverse to Mr. Reisberg's former client, Lutron -- and has refused to withdraw from the case. Accordingly, the Court should disqualify Quinn Emanuel as counsel in this case.

**ARGUMENT**

I.  **QUINN EMANUEL SHOULD BE DISQUALIFIED AND THE PRO HAC VICE STATUS OF ITS ATTORNEYS SHOULD BE REVOKED IN THIS CASE**

   A.  **Quinn Emanuel's Representation of Crestron Violates the Utah Rules of Professional Conduct Which Prevent It From Acting Adversely to Lutron**

"Federal courts generally adopt the rules of professional conduct of the state in which they are located." *Flying J. Inc. v. TA Operating Corp.*, 2008 WL 648545 *at* *3 (D. Utah 2008). Accordingly, "[a]ll attorneys practicing before this court, whether admitted as members of the bar of this court, [or] admitted pro hac vice . . . are governed by and must comply with . . . the Utah Rules of Professional Conduct." DU Civ. Rule 83-1.1(g). *See also SLC Ltd. V v. Bradford Group West, Inc.*, 999 F. 2d 464, 466 (10th Cir. 1993).[3]

Rule 1.9(a) of the Utah Rules of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Rule 1.10(a) of the Utah Rules of Professional Conduct, further provides that such disqualification shall be imputed to the law firm for which the affected person now works: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so . . . ."

---

[3] Because "motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they [also] are decided by applying standards developed under federal law. Therefore, motions to disqualify [also] are governed by the ethical rules announced by the national profession." *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1383 (10th Cir. 1994). "[T]he ABA Model Rules of Professional Conduct . . . reflect the national standard to be used in ruling on disqualification motions . . . ." Accordingly, to the extent there is a difference between the two sets of rules, the Court must additionally consider the ABA Model Rules. *Id.* (recognizing that "[m]otions to disqualify are governed by two sources of authority," the local rules and the ABA's Model Rules).

1

In addition to violating Rules 1.9(a) and 1.10(a), Utah R. Prof'l Conduct, Quinn Emanuel's representation of Crestron also violates Rule 1.10(c), Utah R. Prof'l Conduct. According to Rule 1.10(c): "When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless: (1) the personally disqualified lawyer is **timely screened** from any participation in the matter and is apportioned no part of the fee therefrom, **and** (2) written notice is **promptly** given to any affected former client." (Emphasis added). As discussed herein, Quinn Emanuel made no attempt to screen Mr. Reisberg from the Crestron matter until the instant motion and failed to provide Lutron with the required written notice.

The Rules of Professional Conduct are not guidelines or suggestions that law firms or the Court can ignore or bend. Rather, when these rules are breached, the law firm must voluntarily withdraw or the Court must order it to do so. *See generally Ultradent Products, Inc. v. Dentsply Int'l, Inc.*, 344 F. Supp. 2d 1306 (D. Utah 2004) (disqualifying firm because one of its attorneys previously represented the adverse party while employed by a different firm); *Margulies v. Upchurch*, 696 P.2d 1195, 1204 (Utah 1985) (finding trial court abused its discretion by not requiring firm to withdraw based on conflict of interest).

> **B.     The Four Factor Test For Disqualification Mandates Quinn Emanuel's Disqualification**

The test to disqualify a tainted attorney's entire firm under Rule 1.10(b), Utah R. Prof'l Conduct, was enunciated in *Graham v. Wyeth Laboratories,* 906 F.2d 1419 (10th Cir.1990):

> First, either the lawyer who has changed firms or his prior firm must have represented a client whose interests are materially adverse to the client of the new firm. Second, the two matters must be the same, or substantially [factually] related. Third, the lawyer who has changed firms must have acquired information protected by Rules 1.6 and 1.9(b) that is material to the new firm's representation.

2

>Fourth, the new firm must know of the conflict arising from its representation.

*Id.* at 1422. *See also Ultradent*, 344 F. Supp. 2d at 1308.[4]  The test is applied functionally— "imputed disqualification of a law firm is determined on the facts of the particular situation and is driven in part by the extent to which the attorney involved had access to information about his former client." *Id.*  Notably, Quinn Emanuel bears the ultimate burden of rebutting these elements.  *See SLC Limited v. Bradford Group West*, 999 F.2d 464, 468-69 (10th Cir. 1993) ("[T]he burden remains with the firm whose disqualification is sought");[5] *In re Hansen*, 586 P.2d 413, 415 (Utah 1978) ("[T]he burden would be upon the attorney to show that he made full disclosure and had obtained his client's consent, before he could so proceed").  In this case, it is a burden that Quinn Emanuel cannot meet.

### 1. Lutron's Interests Are Materially Adverse to Creston

It cannot be disputed that Crestron's interests are directly adverse to Lutron's interests. Indeed, Mr. Reisberg previously represented Lutron concerning the very same RF Patents that Lutron is seeking to enforce against Crestron. (Boglioli Decl. at ¶¶ 3-10).  Lutron has sued Crestron for millions of dollars and Crestron, in return, has challenged the validity of Lutron's valuable RF Patents.

---

[4] Rule 1.10 was amended shortly after the *Ultradent* case, allowing for attorneys to be screened in certain instances. However, as the comments to Rule 1.10 expressly declare, "courts may impose more stringent conditions in ruling upon motions to disqualify a lawyer from pending litigation."  Utah R. Prof'l Conduct 1.10 cmt. 5a.  The federal courts appear to have done just that.  The holding in *Ultradent* has neither been criticized nor overturned.

[5] The court in *Bradford* reversed the trial court's disqualification of the firm for reasons that are inapplicable here. Specifically, the court found that the conflicted attorney had not worked on matters that were "material to [the] current litigation."  999 F.2d at 468-69.  In this case, Mr. Reisberg not only worked on matters that are material to this lawsuit, his work is still being used as part of this lawsuit.

## 2. This Case and the Prior Litigations Are Substantially Related

"A substantial relationship exists if the factual contexts of the two representations are similar or related." *Cole v. Ruidodso Mun. Schools*, 43 F.3d 1373, 1384 (10th Cir. 1994) (internal quotation marks omitted). *See also Bradford*, 999 F.2d at 466 ("[S]ubstantiality is present if the factual contexts of the two relationships are similar or related"); *Accounting Principals, Inc. v. Manpower, Inc.*, 599 F. Supp. 2d 1287, 1296-998 (N.D. Okla. 2008) (disqualifying law firm based upon similarity of prior litigation); ABA Rules of Prof'l Conduct 1.9 cmt 3 ("Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter").

It is beyond dispute that the Prior Litigations on which Mr. Reisberg worked are substantially related to the current dispute between Lutron and Crestron. Mr. Reisberg represented Lutron in connection with the infringement and validity of the RF Patents -- the same patents at issue here. (Boglioli Decl. at ¶¶ 3-10). In fact, Crestron has requested "[a]ll pleadings, transcripts, written discovery, and court filings" from the Prior Litigations. (Boglioli Decl. at ¶ 12 and Exhibit 2). Further, this Court has already recognized the related nature of this case and the prior Lutron litigations. Specifically, several months ago Crestron sought to transfer this case to the District of New Jersey. This Court denied that motion in part because "Lutron has already litigated two cases in this District regarding patents that are at issue in the instant matter." *See* Dkt. 41 at p. 5. In other words, the prior litigations in this district were sufficiently related to this pending litigation that even the Court recognized that it had obtained and learned information that would be relevant to the pending litigation.

It is axiomatic that "the current matter is substantially related to the earlier matter if: (1) the current matter involves the work the lawyer performed for the former client." *See* RESTATEMENT (THIRD) LAW GOVERNING LAWYERS § 132.  Much of the work Mr. Reisberg performed for Lutron continues to be utilized as part of this case, and in fact has been utilized in response to Crestron's document request.  (Boglioli Decl. at ¶¶ 11-14).  Indeed, Crestron was long ago advised that Lutron would utilize in this case work product from the Prior Litigations.  The Court's Protective Order expressly anticipates and authorizes Lutron to rely on the document review and designations that Lutron -- through Mr. Reisberg -- performed.  Specifically, the Court's Protective Order (Dkt. 73 ¶ 5(b)) declares:

> Lutron has already produced in prior litigation in this District and elsewhere documents *relevant to this action* that have been marked "LUTRON CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER" and similar marks.  Such documents, if produced in this action, shall not require remarking prior to production . . . .

(Emphasis added).  Should Crestron challenge Lutron's confidentiality or privilege designations in this case, it will be challenging designations made by Mr. Reisberg.

### 3. Mr. Reisberg Acquired Knowledge of Lutron's Sensitive And Privileged Information

As detailed above, there can be no dispute that Mr. Reisberg had access to Lutron's privileged patent and ligation strategy documents.  (Boglioli Decl. at ¶¶ 5-10). Mr. Reisberg was one of two attorneys primarily responsible for reviewing and designating highly confidential and privileged documents -- including documents regarding the RF Patents and regarding Crestron's products -- and Mr. Reisberg was the attorney who reviewed for production and privilege the files of Lutron's legal and patent departments, including the files of Lutron's in-house counsel, its in-

house patent attorneys and patent agents, its consulting engineers and the files of the inventors for the '442 and '103 patents. (*Id.*).

Mr. Reisberg also participated in meetings with Lutron's in-house counsel as well as internal Kaye Scholer meetings discussing litigation strategy and case status. (Boglioli Decl. at ¶¶ 7-8). Mr. Reisberg was also informed of settlement discussions in the Leviton and ITC Cases. (*Id.* at ¶ 7). All told, Mr. Reisberg devoted more than 570 hours to the Lutron Prior Litigations while at Kaye Scholer. (*Id.* at ¶9). In fact, Kaye Scholer itself recognized Mr. Reisberg's key role in these cases while they were pending. (*Id.* at ¶ 10 and Exhibit 1). Mr. Reisberg's work for Lutron was neither minor nor insignificant, but rather highly material to the current litigation.

After informing Quinn Emanuel of the conflict, Quinn Emanuel informed Lutron that Mr. Reisberg "cannot remember any specifics" of his prior representation of Lutron. (Boglioli Decl. ¶ 20 and Exhibit 8). This, of course, is not a defense to the fact that Mr. Reisberg acquired sensitive confidential and privileged information of Lutron in the course of his representation of Lutron. Upon showing that Mr. Reisberg was a substantial member of the Lutron litigation team and was provided its most sensitive information, "[t]he burden now shifts to [Quinn Emanuel] to show that Mr. [Reisberg] did not acquire any material confidential information. Mr. [Reisberg's] repeated statements that he does not remember, are inadequate to meet that burden." *Ultradent Products, Inc.*, 344 F.Supp.2d at 1310. Given the facts here, Quinn Emanuel cannot meet that burden.

    **4.**    **Quinn Emanuel Either Knew or Should Have Known of This Direct Conflict of Interest**

Before representing a client, a law firm must perform a conflict of interest check. *See* Utah R. Prof'l Conduct 5.1 (requiring those with "managerial authority in a law firm[] . . . make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that

all lawyers in the firm conform to the Rules of Professional Conduct"); *id.* R. 5.1 cmt. 2 ("Such policies and procedures include those designed to detect and resolve conflicts of interest . . . .").

In this case, it is uncertain whether Quinn Emanuel failed to perform a conflicts check or whether Quinn Emanuel ignored the conflict once it was identified. In any event, this conflict has persisted unaddressed and unresolved for weeks, if not months, until at least August 5th, when counsel for Lutron raised the conflict with Crestron.

The fact that Lutron learned of the conflict (through no effort on the part of Quinn Emanuel) and had to notify Crestron does not change the analysis. The Rules require the opposite: Quinn Emanuel was supposed to notify Lutron. If anything, it simply demonstrates Quinn Emanuel's apparent disregard for the rules of Professional Conduct. *See, e.g.,* Utah R. Prof'l Conduct 1.10(c) (requiring "written notice [be] promptly given to any affected former client"); Restatement (Third) Law Governing Lawyers § 124 cmt. d(iii) ("Timely and adequate notice of the screening must therefore be given to the affected clients, including description of the screening measures reasonably sufficient to inform the affected clients of their adequacy.").

### C.   Quinn Emanuel Cannot Meet Its Burden With An After-The-Fact Screen

As detailed above, there can be no doubt that Mr. Reisberg had access to, and in fact acquired, facts that require his disqualification. Under the ABA Rules and the Utah Rules of Professional Conduct, Mr. Reisberg's disqualification should be extended to his entire law firm. *See* Utah R. Prof'l Conduct 1.10 ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so . . . ."); ABA R. Prof'l Conduct 1.10 (same). Quinn Emanuel cannot overcome the conflict by implementing a screen of Mr. Reisberg after the fact, and Quinn Emanuel must be disqualified.

Given the facts surrounding Mr. Reisberg's prior representation of Lutron, even assuming *arguendo* that a timely screen would have been sufficient to prevent Quinn Emanuel's disqualification, its untimely, motion-induced screen is insufficient. A proper screen must be "set up at the time when the potentially disqualifying event occurred, either when the attorney first joined the firm or when the firm accepted a case presenting an ethical problem." *LaSalle Nat'l Bank v. Lake County,* 703 F.2d 252, 259 (7th Circuit 1983); *see also Geisler ex rel. Geisler v. Wyeth Lab.,* 716 F.Supp. 520, 526 (D.Kan.1989). Indeed, an untimely screen raises issues about the fair administration of justice where, as here, Crestron replaced their counsel of almost a year, without any obvious or stated reason for the replacement, with a firm that employs an attorney who had access to highly relevant inside Lutron information. Whether confidences are betrayed in fact, to the onlooker something is clearly awry—it looks as if someone is cheating. Any screen must be timely erected **before** any potential for improper disclosure, for "[o]nce Pandora's Box has been opened, the ethical malaise which may have escaped cannot be treated by nailing a plank over the open vessel." *SLC Ltd. V v. Bradford Group West, Inc.*, 147 B.R. 586, 592 (D. Utah 1992, *rev'd on other grounds*).

Courts have routinely rejected screens implemented after the conflict arose. *See EZ Paintr Corp. v. PADCO, Inc.*, 746 F.2d 1459, 1462 (Fed Cir. 1984) (recognizing that the screening measures must be implemented "when the potentially disqualifying event occurred," not after (internal quotation marks omitted)); *LaSalle,* 703 F.2d at 259 (recognizing that screening generally may be sufficient, but only if such protections are enacted "either when the attorney first joined the firm or when the firm accepted a case presenting an ethical problem" and therefore disqualifying firm who did not immediately enact such protections); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1087 (S.D.N.Y. 1989) ("[I]n the course of litigation

both scuttlebutt and official information travel quickly by word of mouth. This Court doubts whether any chinese walls, which were meant to be preemptive, can ever function effectively when erected in response to a motion, and not prior to the arising of the conflict").[6]

### D.     Lutron Is Prejudiced By Quinn Emanual's Representation of Crestron

Lutron will be substantially prejudiced if the motion is denied. Lutron trusted its most sensitive information -- its privileged communications and its litigation and settlement strategies -- to an attorney who Lutron has learned is now a member of the very department of the firm directly opposed to Lutron on this substantially related matter. Lutron is being asked to trust this former ally and his firm, even though the firm has apparently ignored its ethical responsibilities. As discussed above, Quinn Emanuel's untimely protections (adopted only as a result of Lutron raising the issue) do not remedy the breaches that already have occurred. Nor does it solve the appearance of the unfair administration of justice that follows Quinn Emanuel's improper actions. *See generally* Utah R. Prof'l Conduct 8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice . . . ."); *Featherstone v. Schaerrer*, 34 P.3d 194, 200 (Utah 2001) (recognizing that the 'appearance of impropriety . . . coupled with violations of the Code of Professional Responsibility" can require disqualification (omissions in original) (quoting *Margulies v. Upchurch*, 696 P.2d 1195, 1204-05 (Utah 1985)).

Crestron, on the other hand, will suffer no prejudice. Crestron has been and can continue to be represented by Sills Cummis & Gross and has competent Utah counsel on this case, Ray,

---

[6] *See also EZ Paintr Corp. v. Padco, Inc.,* 746 F.2d 1459, 1462 (Fed.Cir.1984) (disqualifying firm when screening procedures not created until three months after attorney joined firm); *Haagen-Dazs Co. v. Perche No! Gelato, Inc.,* 639 F.Supp. 282, 287 (N.D.Cal.1986) (disqualifying firm when screening procedures not established until one year after attorney joined firm); *In re Asbestos Cases,* 514 F.Supp. 914, 922-25 (E.D.Va.1981) (disqualifying firm because screening mechanisms were established after tainted attorney had joined firm). *See also* Utah R. Prof'l Conduct R. 1.10(c)(1) (requiring that the "disqualified lawyer [be] timely screened"); ABA RULES 1.10(a)(2)(i) (same).

9

Quinney & Nebeker.  Quinn Emanuel is only one of three firms representing Crestron and has the least tenure in the case.  Quinn Emanuel is the last firm to enter an appearance for Crestron, having entered its appearance only a month ago.  Based on the above, the exclusion of Quinn Emanuel from this matter at this point should not materially affect Crestron's defense.

## **CONCLUSION**

For the foregoing reasons, the Court should disqualify Quinn Emanuel from continuing to act adverse to Lutron in this matter.  Given the nature of the Motion, Lutron asks the Court to order expedited briefing and give the matter expedited consideration.

Dated: August 11, 2010                                              Respectfully submitted,

By:       /s/Brent O. Hatch
HATCH, JAMES & DODGE
Brent O. Hatch

KAYE SCHOLER LLP
James D. Herschlein

*Attorneys for Lutron Electronics Co., Inc.*