IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LUTRON ELECTRONICS CO., INC.,<br><br>Plaintiff,<br><br>vs.<br><br>CRESTRON ELECTRONICS, INC., a New Jersey corporation, FACE GROUP, INC. D/B/A LIFESTYLE ELECTRONICS, a Utah corporation, LAVA CORP., a Utah corporation, AUDIO VISION SYSTEMS, LLC, a Utah limited liability company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:09-CV-707<br><br>Judge Dee Benson |

This matter is before the court on Plaintiff Lutron Electronics Co., Inc.'s ("Lutron") Expedited Motion to Disqualify Quinn Emanuel Urquhart & Sullivan LLP and Revoke Associated Pro Hac Vice Status in this Case (Dkt. No. 76), and Defendants Crestron Electronics, Inc., Face Group, Inc. d/b/a/ Lifestyle Electronics, Lava Corp., and Audio Vision Systems, LLC's  (collectively "Crestron") Expedited Motion for a Determination of No Conflict of Interest (Dkt. No. 79.)  The court heard oral argument on the motions on September 29, 2010. Having considered the parties' arguments, memoranda, and the relevant law, the court enters the

1

following Memorandum Decision and Order.

## BACKGROUND

In 2006, Lutron hired the law firm of Kaye Scholer LLP to represent it concerning issues related to Lutron's U.S. Patent 5,905,442 (the "442 patent") and U.S. Patent 5,982,103 (the "103 patent"). In September of 2006, Mr. Joshua S. Reisberg was hired as an associate at Kaye Scholer, and in January 2007 Mr. Reisberg joined a group of attorneys at the firm who worked on Lutron's behalf. For approximately 8 months – from January 31, 2007 through August 14, 2007 – Mr. Reisberg, along with other associates and law clerks, reviewed and coded Lutron documents for various lawsuits brought by Lutron related to these patents.[1] Mr. Reisberg reviewed for production and privilege the files of Lutron's legal and patent departments, including the files of Lutron's in-house counsel, its in-house patent attorneys and patent agents, its consulting engineers and the files of the inventors for the '442 and '103 patents. Mr. Reisberg billed a total of 571.15 hours in connection with his document review for Lutron. Mr. Reisberg did not perform any work on Lutron's behalf after 2007, and in September of 2009, Mr. Reisberg left Kaye Scholer and joined the law firm Quinn Emanuel Urquhart & Sullivan ("Quinn Emanuel") in the firm's New York City office.

The litigation presently before the court began on August 8, 2009, when Lutron, still represented by Kaye Scholer, filed a complaint against Crestron in the United States District Court for the District of Utah. Lutron's complaint against Crestron concerns Lutron's '442 and '103 patents – the same patents involved in Lutron's "prior litigations" and therefore the same

---

[1]None of these prior cases brought by Lutron were against Crestron or any of the other defendants in the present action.

subject matter of Mr. Reisberg's prior document review. During the initial stages of the present litigation, Crestron was represented by New Jersey counsel, Sills Cummis & Gross. However, in March 2010, Crestron approached Quinn Emanuel to discuss the possibility of Quinn Emanuel representing Crestron in this action. At that time, neither Crestron nor Quinn Emanuel was aware that anyone at Quinn Emanuel had previously worked at a law firm that represented Lutron and had done work on Lutron's behalf.

On July 12, 2010, Quinn Emanuel entered its appearance in this case on behalf of Crestron. Shortly thereafter, on August 5, 2010, James D. Herschlein, Lutron's counsel at Kaye Scholer, sent a letter to Edward DeFranco, Crestron's counsel at Quinn Emanuel, stating that Mr. Reisberg, a current Quinn Emanuel attorney, had formerly worked at Kaye Scholer and had participated in document review and production on behalf of Lutron. Mr. Herschlein asserted that Mr. Reisberg's prior work for Lutron created a conflict of interest requiring Quinn Emanuel to withdraw from its representation of Crestron in this litigation. (Pl.'s Ex. 6.)

In response to Mr. Herschlein's letter, Mr. DeFranco immediately put in place a formal "ethical wall" at Quinn Emanuel to safeguard any confidential Lutron information to which Mr. Reisberg may have been exposed while at Kaye Scholer. (DeFranco Decl. II ¶ 6.) As part of that process, Mr. DeFranco asked Harry A. Olivar – a partner in Quinn Emanuel's Los Angeles office – to speak to Mr. Reisberg regarding the general scope, but not substance, of Mr. Reisberg's work for Lutron. (Olivar Decl. ¶ 2.) In speaking with Mr. Olivar, Mr. Reisberg confirmed that while he was a first-year associate at Kaye Scholer he engaged in document review on behalf of Lutron. Mr. Reisberg explained that he was one of three first-year associates

3

and several law clerks reviewing and coding documents, supervised by a senior associate who was also reviewing documents. (Reisberg Decl. ¶ 4.) Mr. Reisberg stated that his responsibilities were limited to reviewing and coding Lutron documents for relevance and privilege, and he had no involvement in any attorney-client discussions about what documents to produce or in ultimate decisions related to the production of any document. Mr. Reisberg told Mr. Olivar that he could not recall the content of any document he marked as privileged, nor could he recall any specifics about any particular document he reviewed. (Reisberg Decl. ¶¶ 4, 5.) Mr. Reisberg told Mr. Olivar that he had never discussed any aspect of any matter adverse to Lutron, including the Crestron matter, with anyone at Quinn Emanuel, and he was not even aware of Quinn Emanuel's representation of Crestron prior to August 5, 2010. (Olivar Decl. ¶ 3; Reisberg Decl. ¶ 12.)

Mr. Reisberg was advised that an "ethical wall" had been put in place, and he was instructed not to discuss or share any information or materials with anyone at Quinn Emanuel that related in any way to his prior work at Kaye Scholer on behalf of Lutron. (Reisberg Decl. ¶ 12.) Similarly, Quinn Emanuel personnel were directed not to share with Mr. Reisberg any information or materials relating in any way to Lutron. (DeFranco Decl. II ¶ 7.) In addition, Mr. DeFranco personally spoke with each attorney and staff member working on the Crestron case and confirmed that these individuals understood the precautions that had been put in place and would follow them. Mr. DeFranco also confirmed that nothing inconsistent with the ethical wall had occurred since Mr. Reisberg joined Quinn Emanuel. (DeFranco Decl. ¶ 6.)

Having put in place an "ethical wall," and having confirmed that Mr. Reisberg had not

previously disclosed any confidential Lutron information, on August 9, 2010, Mr. DeFranco informed Mr. Herschlein that Quinn Emanuel would not be withdrawing as counsel for Crestron. (Pl.'s Ex. 7.) Mr. DeFranco informed Mr. Herschlein that upon receipt of the August 5 letter, Quinn Emanuel "immediately put up an ethical wall," and "confirmed that prior to that time nothing inconsistent with the wall had occurred – the associate at issue, Mr. Joshua Reisberg, had not had any communications with anyone at [the] firm about his prior work for Lutron." (Pl.'s Ex. 7.) Mr. Herschlein and Mr. DeFranco exchanged a series of e-mails and written correspondence setting forth their respective positions and attempting to resolve the disagreement over whether Mr. Reisberg's prior employment with Kaye Scholer required Quinn Emanuel to withdraw from representing Crestron in the present action. Ultimately, however, the parties were unable to reach an agreement and on August 11, 2010, Lutron filed an Expedited Motion to Disqualify Quinn Emanuel. (Dkt. No. 76.) That same day, Crestron filed an Expedited Motion for a Determination of No Conflict of Interest. (Dkt. No. 79.) Also on August 11, 2010, Sills Cummis & Gross filed an application to withdraw as counsel for Crestron on the grounds that it had been replaced by Quinn Emanuel. (Dkt. No. 74.)

## DISCUSSION

A court has broad discretion and the inherent authority to disqualify counsel or a law firm. SLC Ltd. v. Bradford Group West, Inc., 999 F.2d 464, 466 (10th Cir. 1993). In exercising that discretion, courts are instructed to take into consideration the important interest a party in a civil case has in retaining counsel of its choice. Procter & Gamble Co. v. Haugen, 183 F.R.D. 571, 574 (D. Utah 198). Disqualification "is a drastic measure and a court should hesitate to

impose it except when necessary." Bullock v. Carver, 910 F.Supp. 551, 559 (D. Utah 1995); see also Parkinson v. Phonex Corp., 857 F.Supp. 1474, 1480 (D. Utah 1994) ("A motion to disqualify should be viewed with extreme caution . . . recognizing the possible unfair advantage that may result.")

In federal court, motions to disqualify are governed by two sources of authority. Cole v. Ruidoso Mun. Schools, 43 F.3d 1373, 1383 (10th Cir. 1994). First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law. Accordingly, motions to disqualify are governed by the ethical rules announced by the national profession and considered "in light of the public interest and the litigants' rights." Cole, 43 F.3d at 1383 (citing In re Dresser Industries, Inc., 972 F.2d 540, 543 (5th Cir. 1992)).

The District of Utah has adopted the Utah Rules of Professional Conduct. DUCivR 83-1.1(g).[2] Utah Rule of Professional Conduct 1.9(a) provides: "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests

---

[2] District of Utah Civil Rule 83-1.2(g) provides:

All attorneys practicing before this court, whether admitted as members of the bar of this court, admitted pro hac vice, or otherwise as ordered by this court, are governed by and must comply with the rules of practice adopted by this court . . . , with the Utah Rules of Professional Conduct, as revised and amended and as interpreted by this court. The court endorses the Utah Standards of Professionalism and Civility (Appendix XII) to guide the attorney conduct in cases and proceedings in this court.

6

of the former client unless the former client gives informed consent, confirmed in writing." Utah Model Rule 1.9, Duties to Former Clients. Rule 1.10 then sets forth a general rule of imputed disqualification, providing that when a particular lawyer has a conflict of interest, that conflict is imputed to the attorney's entire law firm. See Utah Rule of Professional Conduct 1.10(a) (providing that "while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited"). However, Rule 1.10(c) provides an avenue for removal of the imputed disqualification if certain conditions are met. Rule 1.10(c) provides:

> When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless:
> (c)(1) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom, and
> (c)(2) written notice is promptly given to any affected former client.

Utah Rule of Professional Conduct 1.10(c). The Utah rule differs from the ABA Model Rule by explicitly permitting the use of ethical screens for lawyers moving between private firms who would otherwise be disqualified under Rule 1.9. Under the Utah rule, so long as the conditions of paragraph (c) are met, the imputed disqualification is removed, and consent to the new representation is not required. See Comment [5a] to Utah Rule of Professional Conduct 1.10.

At issue in this case is application of Rule 1.10(c). Lutron asserts that Quinn Emanuel did not timely screen Mr. Reisberg and that Quinn Emanuel failed to provide Lutron with the required written notice. Lutron contends, therefore, that because Rule 1.10(c) was "breached," Quinn Emanuel "must voluntarily withdraw or the Court must order it to do so." (Pl.'s Mem. In Supp. Mot. to Disqualify at 2.)

Quinn Emanuel asserts, however, that it complied with the requirements of Rule 1.10(c) by implementing an ethical screen around Mr. Reisberg as soon as Crestron's counsel became aware of the conflict. Additionally, Quinn Emanuel asserts that plaintiff's claim that the conflict of interest mandates *per se* disqualification based on the "appearance of impropriety" has been repeatedly rejected by this court. Instead, Crestron asserts that this court applies a "functional analysis" to disqualification motions, and under a functional analysis, it should not be disqualified from continued representation of Crestron.

As an initial matter, the court agrees with Quinn Emanuel that this court applies a functional analysis to disqualification motions. See, e.g., Procter & Gamble Co. v. Hausen, 183 F.R.D. 571, 574 (D. Utah 1998) (denying motion to disqualify and stating that "a functional analysis is required"); Parkinson v. Phonex Corp., 857 F.Supp. 1474, 1476 (D. Utah 1994). Both the Utah Rules of Professional Conduct and this court's precedent reflect the trend among numerous jurisdictions that have adopted a "functional analysis" to decide issues of imputed conflicts.[3] See Flying J Inc. v. TA Operating Corp., 2008 WL 648545, *6 n.64 (D. Utah March 10, 2008) (listing numerous cases from the District of Utah providing that "inflexible disqualification was not appropriate" and using functional approach to disqualification motions).

---

[3]For example, within the Utah Rules of Professional Conduct it states:

> [I]t should be recognized that today many lawyers practice in firms, that many lawyers to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers. If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

Comment [4] to Rule 1.9 of the Utah Rules of Professional Conduct.

In adopting this approach, the court has expressly stated that "the fact that the conduct in question has been found to constitute a violation of the Code of Professional Responsibility does not require disqualification of counsel as a matter of course." Parkinson, 857 F.Supp. at 144; Flying J., 2008 WL 648545, *6. As the precedent explains, the standards of professional conduct, which are meant to be enforced by entities governing the practice of law, cannot be enforced effectively by the court during litigation because the considerations in each forum are different. See Shannon's Rainbow, LLC v. Supernova Media, Inc., Slip Opinion, 2010 WL 3522093 (D. Utah September 8, 2010) (citing Parkinson, 857 F.Supp. at 1476).

Accordingly, when considering the sanction of disqualification of counsel in the context of litigation, using a functional analysis the court must consider "the facts of each particular case as they bear upon the impact of counsel's conduct upon the trial." Parkinson, 857 F.Supp. at 1480. Important factors to consider include "[t]he egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel." Id. In addition, "equitable considerations such as the hardship to the other side and the stage of trial proceedings are relevant. Id. The "essential issue to be determined," however, "is whether the alleged misconduct taints the lawsuit." Parkinson, 857 F.Supp. at 1476; Bodily, 649 F.Supp. at 478  Applying the foregoing principles and relevant factors to the specific facts of this case, the court finds that the alleged misconduct does not taint the pending lawsuit.

First, to the extent there was any violation of Rule 1.10(c), the court finds the violation was not egregious. As set forth above, Rule 1.10(c) provides that appropriate ethical screens are

sufficient to preclude disqualification for imputed conflicts without a waiver from the affected former client. The rule further provides that "no lawyer associated in the [lawyer's new] firm shall *knowingly* represent" a client in a matter involving an imputed conflict unless an ethical screen has been put in place. Utah Rule of Professional Conduct 1.0 defines "knowingly" to mean "actual knowledge of the fact in question."

In this case, the facts make clear that the Quinn Emanuel lawyers representing Crestron were unaware of any possible imputed conflict resulting from the representation until they received notice from Lutron on August 5, 2010. Although Lutron vigorously asserts that Crestron violated the rule because they "should have known" of the conflict, the Utah Rules of Professional Conduct expressly states that *actual knowledge* is what is required. Moreover, because the Rule requires *actual* knowledge, the court finds that the ethical screen was timely under the circumstances. As soon as counsel for Crestron received notice of the conflict from Lutron's counsel, they immediately established an effective ethical screen in full compliance with the rules. While it certainly would have been preferable for Quinn Emanuel to conduct an effective conflicts check and discover the conflict initially, once it had the requisite knowledge, it acted in accord with the rules. Finally, although Lutron claims that counsel for Crestron failed to give "notice" as required by the rule, given that counsel for Crestron learned of the conflict *from Lutron*, there was no opportunity to "notify" Lutron and doing so would have been pointless. Moreover, even though counsel for Crestron was initially unaware and therefore could not "notify" Lutron of the conflict, it did thereafter notify Lutron of the measures it had taken to screen Mr. Reisberg and to ensure that Lutron's confidential information would be protected.

(Pl.'s Ex. 7.)  Given these facts, the court finds that Quinn Emanuel's conduct was not egregious.[4]

Additionally, the court finds there is no prejudice to Lutron. The conflict in question is the result of a limited amount of work by Mr. Reisberg – a first-year associate who was not involved in litigation strategy – that occurred more than two years before he joined Quinn Emanuel. No Lutron information has been communicated to Crestron's counsel, and Mr. Reisberg cannot remember anything confidential or otherwise in any event. Importantly, Mr. Reisberg has not discussed anything about Lutron with anyone at Quinn Emanuel, with the exception of simply disclosing that he does not recall anything. Finally, nothing inconsistent with an ethical wall has occurred, and given that the ethical wall was erected immediately upon learning of the conflict, there does not appear to be any risk to Lutron's confidential information.

Finally, there has been no diminution of counsel's effectiveness in this case and the equitable considerations militate against disqualification. As set forth above, parties to litigation have an important interest in being able to retain counsel of their choice. See Procter & Gamble, 183 F.R.D. at 574. Under these circumstances, the court declines to order that Crestron must proceed without its chosen counsel, recognizing that Crestron has taken appropriate steps to assure Lutron that there is no legitimate basis for the concern that its confidences are at risk.

---

[4] The court also notes that one of the facts which Plaintiff finds so egregious – that Mr. Reisberg was privy to numerous confidential Lutron documents and is now part of the other team – is a fact that would be no different had Crestron done everything Lutron claims it should have. As explained in detail in the body of this Order, by allowing law firms to avoid imputed disqualification through the implementation of ethical screens, the Utah Rules of Professional Conduct explicitly contemplate and permit that very scenario.

## **CONCLUSION**

The court finds there has been no misconduct that could potentially "taint" this litigation, nor has there been "the type of [egregious] conduct generally associated with the harsh sanction of disqualification." Parkinson, 857 F.Supp. at 1477. Nothing inconsistent with an ethical wall has occurred. Nobody at Quinn Emanuel has received any information regarding Mr. Reisberg's former representation of Lutron, nor will Mr. Reisberg be able to share any such information in the future because Quinn Emanuel has created an ethical wall to prevent Mr. Reisberg and any personnel at the firm from sharing any information or materials relating in any way to Lutron.

Plaintiff's Expedited Motion to Disqualify Quinn Emanuel is DENIED. (Dkt. No. 76.) By this ruling, Defendant's Expedited Motion for a Determination of No Conflict of Interest has been rendered MOOT. (Dkt. No. 79.) Sills Cummis & Gross' Motion to Withdraw as counsel for Crestron is GRANTED. (Dkt. No. 74.)

DATED this 12 day of November, 2010.

_____
Dee Benson
United States District Judge