IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LUTRON ELECTRONICS CO., INC., <br><br>Plaintiff, <br><br>v. <br><br>CRESTRON ELECTRONICS, INC., <br><br>Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br>Case No. 2:09-cv-707 <br><br>Judge Clark Waddoups |

## INTRODUCTION

Defendant Crestron Electronics, Inc. ("Crestron") filed an amended counterclaim against Lutron Electronics Co., Inc. ("Lutron"), alleging false patent marking in violation of 35 U.S.C. § 292 ("§ 292" or "the false marking statute") (Dkt. No. 197). Before the court is Lutron's motion to dismiss Crestron's counterclaim for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (Dkt. No. 206). For the reasons stated herein the court GRANTS Lutron's motion to dismiss.[1]

## FACTUAL BACKGROUND

Crestron and Lutron are alleged to be corporate competitors in the electric and electronic control products industry. Two of Lutron's brochures, the Specification Guide and the Wallbox Lighting Controls Catalogue ("the product brochures"), list over 450 products and state that the products listed therein "may be covered by one or more" of 99 or 136 listed patents. The

---

[1] The court denies Lutron's motion to strike response to notice of supplemental authority (Dkt. No. 145). The response did not inform the court's decision on the motion to dismiss.

product brochures were published at www.lutron.com. Amended Complaint, ¶¶ 16-25, and attached exhibits (Dkt. No. 197). Lutron's product installation sheets, packaged with the products and accessible on the Lutron Website, also state that Lutron dimmers "may be covered" by certain patents. Finally, Creston alleges that Lutron's Radio RA RA-6D product is marked with U.S. Patent No. 5,905,442 ("the '442 patent"), but that the patent does not cover that product. Creston alleges in summary that Lutron has falsely marked "numerous of its products with the numbers of unexpired but inapplicable Lutron patents that do not cover the products on which they are marked." *Id.* ¶ 12. Based on the patents listed in the product brochures and installation sheets, Creston alleges a violation of § 292 through false use in advertising. As to the RA RA-6D product, Creston alleges false marking, claiming that the product is outside the scope of the '442 patent.

## DISCUSSION

### I. STANDARD FOR A MOTION TO DISMISS

When evaluating a motion to dismiss under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). The court need not consider, however, allegations which are conclusory, or that "do not allege the factual basis" for the claim. *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Moreover, the court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Although all reasonable inferences must be drawn in favor of the non-moving party, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Under this standard, a claim need not be probable, but there must be facts showing more than a "sheer possibility" of wrongdoing. *Id.*

## II.  FALSE PATENT MARKING

Crestron brings this counterclaim against Lutron alleging three sets of false marking claims under § 292. Section 292, which was amended in September of 2011, provides in relevant part:

> [(a)] Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . . ;
>
> Shall be fined not more than $500 for every such offense. . . .

35 U.S.C. § 292(a) (2006). The false marking statute is a criminal statute that is punishable by a civil fine. *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1361 (Fed. Cir. 2010). It allows for a private right of action, however, stating "[a] person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury." *Id.* § 292(b). "The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public." *Fasteners for Retail, Inc. v. Anderson*, No. 11C2164, 2011 WL 5130445, at *2 (N.D. Ill. Oct. 28, 2011) (quoting *Forest Group, Inc v. Bon Tool Co.*, 590 F.3d 1295, 1300

(Fed. Cir. 2009)) (noting the two elements of the false marking statute still apply post amendment).

The September 2011 amendments also require a private individual filing a civil action pursuant to § 292 to prove competitive injury as an additional element. *See Fisher-Price, Inc. v. Kids II, Inc.*, No. 10-CV-00988A(F), 2011 WL 6409665, at *8 (W.D.N.Y. Dec. 21, 2011). Prior to the September 2011 amendments, the statute provided for a *qui tam* cause of action. Any individual, whether a competitor or not, could bring suit for a false marking. Recovery, however, was limited to $500 per act, which was to be split evenly between the United States and the *qui tam* relator. The amendments eliminated the ability of any party other than the United States to collect the $500 fine, but provided for a civil cause of action for those injured by false marking. The amendments also clarified that the mark of an expired (but otherwise relevant) patent did not constitute a false mark. Specifically, the statute states, "[t]he marking of a product . . . with matter relating to a patent that covered that product but has expired is not a violation of this section." 35 U.S.C. § 292(c).

Congress provided that the 2011 amendments "shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act [September 16, 2011]." Pub. L. No. 112–29, § 16(b)(4) (amending notes to § 292). The parties do not dispute that this includes the current case.[2] Because the amendment is relatively recent, nearly all case law interpreting § 292 involves the previous *qui tam* statute, and the parties dispute the extent to which such cases remain relevant.

---

[2]Because of the dismissal of the claims on other grounds, the court does not reach Lutron's argument that the new private cause of action recognized in the new amendment does not extend to conduct that preceded enactment of the amendments.

A. **False Marking**

Section 292 defines false marking to include "marking upon, affixing to, or using in advertising the word 'patent' or any word or number importing that an article is patented." 35 U.S.C. § 292. In the present case, Crestron contends that the product brochures and installation sheets falsely advertise products as patented through the use of conditional language. Am. Countercl., 3-4 (Dkt. No. 197). Crestron further alleges that the Radio RA RA-D6 product is outside the scope of the '442 patent, and therefore the product is falsely marked.[3] *Id.* at 6-7.

i. **Conditional Language**

Generally, an article qualifies as unpatented for the purposes of § 292 when "the article in question is not covered by at least one claim of each patent with which the article is marked." *See Clontech Laboratories, Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1352 (Fed. Cir. 2005). While *Clontech* provides a definition for an unpatented article, neither the facts of the case nor the court's analysis explicitly deals with conditional language. In *Pequignot*, however, the court discusses conditional language in patent marking and concludes that "marking with the 'may be covered' language could legally constitute false marking." *See Pequignot,* 608 F.3d at 1365 (noting that conditional language could violate the false marking, but ultimately granting summary judgment for the defendant as there was no intent to deceive). The helpfulness of the analysis is limited because the parties agreed "that the contents of some of the packaging containing the 'may be covered' language were unpatented, as the products had never been protected by any patent or pending patent application." *Id.* at 361. This admission seemed to

---

[3] Whether Lutron's marking of the Radio RA RA-D6 with the '442 patent violated § 292 ultimately turns on deceptive intent. Thus, the '442 patent will be discussed at length in the context of deceptive intent.

5

preclude any argument that the conditional language did not imply patent protection for products never covered by a patent.

A court also addressed the conditional marking issue in *Brinkmeier v. Graco Children's Products Inc.,* 767 F. Supp. 2d 488, 494 (D. Del. 2011). In that case the court denied defendant's motion to dismiss a false marking claim, rejecting the defendant's argument that conditional marking constitutes a *per se* bar to a false marking claim. *See Id.* (noting that the Federal Circuit in *Pequignot* recognized the possibility of a false marking violation through the use of conditional language where products are outside the scope of the patent). Similarly, in *Hollander v. Etymotic Research, Inc.*, 726 F. Supp. 2d 543, 557 (E.D. Pa. 2010), the court denied defendant's motion to dismiss a false marking claim, noting that conditional language can constitute false marking. The court in *Hollander* observed that "[o]ne valid patent listed among several expired patents [does] not suffice to have this Court hold that the markings were not false under the meaning of § 292." *Id.* (noting the fact that conditional markings may be "'literally true' does not negate the fact that they were false in other regards"). Nevertheless, in *Open Innovation LLC v. Char-Broil, LLC*, No. 4:11-cv-16, 2011 WL 3664411, at *1 (M.D. Ga. Aug. 19, 2011), the court rejected the argument that a marking that "one or more" of the listed patents protects the product was a false marking, stating the complaint does not allege a false statement.

Each of these cases is based upon an analysis of the facts alleged in that particular case. Those analyses have not to date allowed the law to clearly develop the appropriate distinction between a conditional marking that is sufficient to state a false marking claim and one that does not. In this case, it is not necessary to resolve this issue because the court finds that Creston has failed to allege sufficiently an intent to deceive. The court concludes that the distinctions to be

drawn in conditional marking cases are better left to another case when the analysis can be based upon a more complete record than is presented in this counterclaim.

### B. The Applicability of Rule 9(b)

The false marking statute is a specific intent statute that requires a false marker to act "for the purpose of deceiving the public." 35 U.S.C. § 292. Accordingly, many courts, both before and after the September 2011 amendments, have applied Rule 9(b) which imposes a heightened pleading requirement on claims of fraud. *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011) (finding Rule 9(b) the applicable pleading standard in *qui tam* false marking claims); *GL Trade Americas v. Trading Technologies Int'l*, No. 11 C 1558, 2012 WL 205909, at *3 (N.D. Ill. Jan. 23, 2012) (applying Rule 9(b) to the false marking statute after the September 2011 amendments); *Blenheim Group v. Golf Gifts & Gallery*, No. 1:11-CV-899, 2011 WL 5373992, at *2 (N.D. Ill. Nov. 4 2011) (same); *Fasteners*, 2011 WL 5130445, at *3 (same); *Mikityanskiy v. DMS Holdings*, No. 11 Civ. 1243(PGG), 2011 WL 4552350, at *2 (S.D.N.Y. Oct. 3, 2011) (same).

Here, Crestron contends that the Rule 9(b) heightened pleading standard no longer applies under the amended statute. Opp'n Mot. Dismiss, 1-2 (Dkt. No. 211). It argues that the question is one of first impression among the courts and turns to the legislative history of the amendments and nuances of the controlling case law to argue that a heightened pleading standard is no longer necessary because the statute now requires a showing of harm.[4] *Id.*

---

[4]It is true, as Crestron observes, that the statute no longer allows any person to bring suit to enforce it, and the need for a gatekeeper standard to deflect frivolous cases might not be as crucial as it once was. At the same time, however, while Congress amended who could bring suit, it did not disturb the specific intent requirement. Even a competitor who can prove competitive harm has no claim to relief under the statute unless it can also prove that the false marking was accomplished out of purposeful deceit. Congress could have revised this

As Lutron points out, however, several courts have already applied Rule 9(b) to post-amendment false marking cases. Reply Mem. Supp. Mot. Dismiss, 1-2 (Dkt. No. 213). In *Fasteners*, a case upon which Crestron extensively relies for other portions of its arguments, the court explained that "[t]he bar for proving deceptive intent in false marking cases is particularly high. . . . Although 'knowledge' and 'intent' may be averred generally, Federal Circuit precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Fasteners,* 2011 WL 5130445, at *3 (internal quotations and alterations omitted). Moreover, the court has found no cases that conclude the amendment changed the requirement so that false marking claims no longer must be pled with particularity. Thus, the court concludes that Rule 9(b) continues to apply to claims under § 292, and, thereby, deceptive intent must be pled with sufficient particularity.

Finally, nothing in the September 11 amendments changed the purpose for requiring that deceptive intent must be pled with particularity. The rationale for the requirement is the same as in the particularity requirements for pleading fraud. A defendant should fairly be given detailed notice of the factual basis for the claim to allow him to defend against the claim and to deter the damaging and disruptive impacts flowing from an unsupported claim of fraud or deception. Amending the application of the right for a private party to proceed *qui tam* did not alter in anyway the prudential need for these protections.

---

requirement. Instead, it chose to strengthen it by providing that no claims could be brought against a company marking with expired, but otherwise applicable, patents. What the legislative history shows is that Congress knew courts were requiring that false marking claims satisfy Rule 9(b), but it did not act to change this when amending the statute. Opp'n Mot. Dismiss, 2-4 (Dkt. No. 211).

### C. Deceptive Intent

Lutron argues that under the required Rule 9(b) standard for pleading deceptive intent, Crestron fails to plead sufficient facts to support the claim that the patent markings in the product brochures, and on the '442 patent, were meant to deceive the public. Mem. Supp. Mot. Dismiss, 3-8 (Dkt. No. 207). Under § 292, a claimant must generally "allege sufficient underlying facts from which a court may reasonably infer that a party acted" to deceive. *BP Lubricants,* 637 F.3d at 1311. Nonetheless, because the evidence showing deceptive intent may be in the hands of the patent marker, the requirement may be satisfied, when alleged with sufficient details, the claimant pleads facts which show that the patents were marked with knowledge that they were false. *Id.* Such an allegation, however, allows only a rebuttable presumption of deceptive intent. At the pleading stage, a general allegation that the patent holder "knew" the facts were false is not sufficient to plead deceptive intent with particularity. As the court explained in *Pequignot*, "the statute requires that the false marker act 'for the purpose of deceiving the public,' a purpose of deceit, rather than simply knowledge that a statement is false, is required." 608 F.3d at 1363. Relying upon this distinction, the court in *BP Lubricants* recognized that while the "*Pequignot* presumption informs the determination of whether a false marking plaintiff has met rule 9(b), . . . [t]he bar for proving deceptive intent [in false marking cases] is particularly high." The plaintiff must allege facts to show "a purpose of deceit," not "simply knowledge that a statement is false." 637 F.3d at 1313. The fact that a plaintiff has alleged facts sufficient to "activate the *Pequignot* presumption is simply a factor in determining whether Rule 9(b) is satisfied, it does not, standing alone, satisfy Rule 9(b)'s particularity requirement." *Id.* Creston's allegations in this case fail to meet the bar required to allege deceptive intent.

Creston's allegations that Lutron had the required deceptive intent consist of the following assertions: (1) Lutron is a large sophisticated company that retains legal counsel, (2) Lutron has experience with the patent process and knows that patents have a limited scope, (3) Lutron marks products extensively with conditional marking and engages in false marking, (4) Lutron engaged in false marking to deceive competitors and customers and to gain a competitive edge, (5) Lutron knew that the conditional marking of over 450 products would prevent competitors and customers from determining which patents cover which products, and (6) Lutron has sued Crestron and others for patent infringement, thus, heightening the likelihood that consumers will be improperly influenced by Lutron's false marking. Am. Countercl., 18-20 (Dkt. No. 197). No additional more particularized facts are pled.[5]

---

[5] Crestron's complete allegations read:

- Lutron is a large, sophisticated company that, upon information and belief, has, or regularly retains, legal counsel.
- Upon information and belief, Lutron has extensive experience and expertise with the patent process, as well as with marking goods sold and offered for sale with respect to its patents and pending patents, and is aware that its patents have limited scope.
- Lutron falsely marks its products extensively with conditional marking language, in some cases advertising hundreds of its products as conditionally covered by about a hundred different patents. Lutron's extensive use of this conditional marking language is evidence of its bad faith and intent to deceive the public, including competitors and potential competitors and customers and potential customers, by falsely exaggerating the apparent scope of its patent coverage.
- Lutron's bad faith and intent to deceive the public, including competitors and potential competitors and customers and potential customers, are further demonstrated by the extensive false marking in which it has engaged and continues to engage, marking its products with patents that do not cover the products. . . .
- Despite the fact that Lutron has been or should have been aware that various of its patents were inapplicable and did not protect the products with which they were identified, Lutron falsely marked products with those patents and/or falsely

Lutron argues that Crestron's general allegations do not satisfy the pleading requirements of Rule 9(b).  Mem. Supp. Mot. Dismiss, 2 [Dkt. No. 207].  Lutron further asserts that the conditional marking of patents in the product brochures undermine any claim of deceptive intent. *Id.* at 6.  The court will address each of these arguments in turn.

### i.   Generality

Rule 9(b) provides "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally."  Fed. R. Civ. Pro. 9(b).  A pleading may satisfy Rule 9(b) when it "sets forth the specific facts upon which the belief is reasonably based," when the "essential information lies uniquely within another party's control."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009).

---

> advertised on the Lutron Website that those products may have been covered by those patents and/or included product inserts with those products claiming that those products may have been covered by those patents, in an apparent attempt, upon information and belief, falsely, intentionally, and in bad faith to deceive Crestron, other competitors and potential competitors, customers, and potential customers into believing that those products were protected by the inapplicable patents and thereby obtain an improper competitive advantage.
> - Upon information and belief, Lutron knew that its extensive and repeated conditional marking of over 450 products with about a hundred U.S. patents would effectively prevent competitors, potential competitors, customers, potential customers, and members of the public in general from determining which, if any, patents actually cover which products**. . . .**
> - Lutron has sued Crestron customers for patent infringement.  Lutron's demonstrated willingness to sue customers of its competitors for patent infringement heightens the likelihood that customers and potential customers of Crestron and other Lutron competitors have been and will be improperly influenced in their purchasing decisions by Lutron's false and extensive listings of inapplicable patents in connection with its products.

11

Here, Crestron's six allegations pertaining to deceptive intent are appropriately summarized to include that Lutron is a large sophisticated company that retains legal counsel, that it is experienced in patent matters, that it uses conditional marking and that it has sued Crestron and others for patent infringement, thus, heightening the likelihood that consumers will be improperly influenced by Lutron's false marking.  Am. Countercl., 18-20 (Dkt. No. 197).

*BP Lubricants* addresses the issue of whether an allegation that a company is sophisticated is enough to meet the particularity requirement.   In *BP Lubricants,* the plaintiff alleged the false marking of the motor oil product Castrol, claiming that it had adequately pleaded deception by alleging that the defendant was a sophisticated company and knew the patent had expired.  The Federal Circuit granted a mandamus dismissing the complaint, finding the plaintiff's assertion "that BP is a sophisticated company and has experience applying for, obtaining and litigating patents" is insufficient under Rule 9(b).  *BP Lubricants,* 637 F.3d at 1312 (quotations and citations omitted).  The *BP Lubricants* court observed that such conclusory allegations are not entitled to an assumption of truth at any stage of the litigation.  *Id.*  The court finds the *BP Lubricants* holding controlling and finds the allegation that Lutron is a sophisticated company insufficient to plead deceptive intent under Rule 9(b).  Claiming that Lutron is experienced in patent matters is simply a variation in this same allegation and adds no additional particularized facts.

As to the allegation that Lutron has sued Crestron and others for patent infringement, the Federal Circuit in *BP Lubricants* suggests that suing a third party for patent infringement after expiration may be sufficient to plead deceptive intent.  *Id.*  Similarly, in *Berkmeier* the United States District Court for the District of Delaware found that the plaintiff sufficiently pled deceptive intent as to the '437 patent when there were allegations that the defendant had been

12

sued by two competitors for infringement on the '437 patent, the '437 patent was revised three times after expiration, and the defendant, nonetheless, continued to include the '437 patent on its products. *Berkmeier*, 767 F. Supp. 2d at 553.

In the present case Crestron asserts that Lutron has sued on the '930 patent, one of the patents at issue in the present action, on two separate occasions. Opp'n Mot. Dismiss, 11 (Dkt. No. 211). This case is distinguishable from the suggestion in *BP Lubricants*, however, because Lutron is not suing on an expired patent or revising a patent after expiration. *BP Lubricants,* 637 F.3d at 1312. This case is also distinguishable from *Berkmeier* because Lutron has sued others for infringement on the '930 patent, but has not been sued by a third party on the '930 patent. *Berkmeier*, 767 F. Supp. 2d, at 553. This distinction is significant because while a suit against Lutron on the '930 patent may put Lutron on notice as to potential false marking, Lutron's suit on the patent asserts the opposite—the application and enforceability of the patent. Suit by Lutron claiming infringement on the '930 patent does not allow an inference of false marking by Lutron. Practically, Lutron's listing of the patents in a half page notice may be motivated by space efficiency and an intent to give notice to would-be infringers rather than an intent to deceive. Finally, the court finds merit in Lutron's assertion that "[n]o consumer or competitor is going to believe that *every* one of the 99 and 139 patents covers *every* one of the 450 products." Mem. Supp. Mot. Dismiss, 6 [Dkt. No. 207). Embedding a patent number on a product has a markedly different and more deceptive effect on the consumer than listing patents at the end of a brochure. The court, therefore, finds the fact that Lutron has sued on the '930 patent is insufficient to support an inference of deceptive intent.

### ii. Conditionality

Although the court does not decide whether under the facts of this case a conditional patent marking may in some circumstances constitute false marking, the allegation of a conditional marking is nevertheless relevant to whether deceptive intent has been adequately pled. A conditional marking that is technically true supports the inference that the patent marker did not intend to deceive the public. For example, the court noted in *Pequignot*, when discussing conditional marking, that "it is highly questionable whether such a statement could be made 'for the purpose of deceiving the public,' when the public would not reasonably be deceived into believing the products were definitely covered by a patent." *Pequignot,* 608 F.3d at 1365 (finding defendant successfully rebutted the presumption of intent to deceive where defendant relied on advice from counsel, and used the conditional phrase, "[t]his product may be covered by one or more U.S. or foreign pending or issued patents"). In *Pequignot* the court granted summary judgment in favor of the defendant of the false marking claim. That conclusion, however, was informed by the fact that defendant had relied on advice from counsel to continue marking products, and evidence that the true intent of the false marks was to reduce costs associated with removal of the marks. In *Open Innovation,* a case that is factually and procedurally similar to the present case, the court relied on *Pequignot* to conclude that grill products marked with the phrase, " [this] grill product is protected under 'one or more' of approximately 100 U.S. patents," would not deceive the public into believing that the grills were definitely covered by all of the listed patents. *Open Innovation*, 2011 WL 3664411, at *3. The court found the allegation did not plead sufficient fact to meet the requirements of Rule 9(b).

Creston argues that these cases should not be controlling, relying upon the statement from *Berkmeier*, that the use of conditional language does not belie intent to deceive the public.

14

*Berkmeier*, 767 F. Supp. 2d at 495-96.  *Berkmeier* is factually distinguishable because the defendant was marking products themselves, not a catalogue.  *Id.* at 491.  Creston also relies upon the court's statement in *Hollander* rejecting a conditional marking as negating a false marking claim, stating "[a]ccording to Defendant's logic, the actual language used in its product markings must be false in its entirety to establish an actual violation of the statute."  *Id.*  In reaching that conclusion, the court relied upon the *Clontech* definition of "unpatented" requiring that an article be considered unpatented when the article in question is not covered by at least one claim of each patent with which the article is marked.  The *Hollander* court fails, however, to advance a persuasive argument as to why that general language should be applied in facts similar to the facts in this case.

The court does not find the discussion of the issue in *Berkmeier* or *Hollander* persuasive when applied to the allegations in this case.  The alleged conditional marking appears at the end of  product brochures, each of which lists over 450 products.  The supposedly false marking includes 99 listed patents in the Specifications Guide and 136 in the Wallbox Lighting Controls catalog.  The issue is whether the allegation of such facts is sufficient to plead with particularity that Lutron, by including that statement in its product brochures, intended to deceive the public that the 450 products were protected by the patents.  First the language is that the products "may be covered."  "May" is a clear communication that protection is possible but not certain.  It implies more a notice than a false statement.   Second, the conditionality of the statement when combined with the number and variety of products makes it less than plausible that any rationale fact-finder could reasonably conclude the intent was to deceive rather than give notice.  Taking into account that the purpose of the brochures is to identify products and efficiently give notice,

not emphasize patent protection, deception is not a clear inference.  On the facts of this case, these allegations do not meet the pleading requirements.

In sum, Crestron has not sufficiently pled facts that give rise to an inference of deceptive intent regarding the patent markings in the product brochures. Accordingly, all of Crestron's claims concerning the product brochures are dismissed pursuant to Rule 12(b)(6).

### D.     The '442 Patent

Crestron's final set of false marking claims involves the marking of Lutron's Radio RA RA-6D product with the '442 patent**.**  Lutron also argues Crestron cannot plausibly plead this marking was done with the "intent to deceive the public" because Lutron, in marking the product with the '422 patent, was relying on two court decisions which held the patent was applicable. Mem. Supp. Mot. Dismiss, 8 (Dkt. No. 207).  Crestron responds that this is an argument about the merits of the case, not the sufficiency of the pleading.  Opp'n Mot. Dismiss, 13-15 (Dkt. No. 211).

Lutron's argument that it had good faith reason to mark the Radio RA RA-6D with the '442 patent is not dependent on how the court now interprets the '442 patent, rather, it rests upon the proposition that Lutron had the right to rely upon the previous interpretations.  When a party takes a "legal position" on the scope of a patent which is "sufficiently plausible," that party "could not have acted with the deceptive purpose necessary to trigger liability under the false marking statute."  *Max Impact, LLC v. Sherwood Group, Inc.*, No. 09 Civ. 902 (LAM.), 2011 WL 507600 at *3 (S.D.N.Y. Feb. 14, 2011) (quoting *Kevin Foods, L.C. v. Pigments Vegetable Del Centra S.A. de C.V.*, 464 F.3d 1339, 1355 (Fed. Cir. 2006)).  For instance, the Federal Circuit has held that when a company marks a patent in reliance on laboratory results, even in the face of conflicting data from other experiments, it is clearly erroneous for a court to find that

the company had the requisite intent to violate § 292. *Clontech Laboratories*, 406 F.3d at 1353–54. Reliance on a court's construction of the '442 patent is similarly reasonable.

Crestron does not dispute that two earlier decisions of this court construed the '442 patent in a way that would render it applicable to the Radio RA RA-6D. Opp'n Mot. Dismiss, 13-15 (Dkt. No. 211). Furthermore, Crestron is no longer alleging, as it previously did, that Lutron obtained those rulings by making willful misrepresentations to the court. Am. Countercl., 8 (Dkt. No. 197). Given this factual basis, Crestron's allegations that Lutron acted with intent to deceive when it marked the Radio RA RA-6D product with the '442 patent are legally implausible. Therefore, Creston's claims as to the '442 patent are dismissed for failure to sufficiently plead deceptive intent.

## **CONCLUSION**

For the reasons set forth above, Lutron's Motion to Dismiss for failure to state a claim is GRANTED.

DATED this 6th day of August, 2012

BY THE COURT:

_____

Clark Waddoups
United States District Judge