IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LUTRON ELECTRONICS CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC. et al.,<br><br>Defendants. | MEMORANDUM DECISION ON LUTRON'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT<br><br><br>Case No. 2:09-cv-00707 CW<br><br>Judge Clark Waddoups |

In this action, Plaintiff Lutron Electronics Co., Inc., ("Lutron") alleges, among other things that Defendants Crestron Electronics, Inc.,  Face Group, Inc. d/b/a Lifestyle Electronics, Lava Corp. and Audio Video Systems, (collectively the "Defendants") have infringed Lutron's U.S. Patent 5,892,103 (the "'103 Patent").  Defendants have asserted as an affirmative defense and as Count XV of its Counterclaim that the '103 Patent is unenforceable because of Lutron's inequitable conduct.  Now before the court is Lutron's Motion for Summary Judgment dismissing the affirmative defense and barring the Counterclaim for inequitable conduct. (Dkt. No. 385).   In their affirmative defense and Counterclaim, Defendants allege that Lutron failed to disclose to the United States Patent and Trademark Office ("Patent Office") prior art references that were material and that such conduct was deliberate in an attempt to deceive the Patent Office.  For the reasons set forth hereafter, the court GRANTS the motion in part and DENIES the motion in part.

To prove inequitable conduct, in a case involving the non-disclosure of information, "the accused infringer must prove by clear and convincing evidence [1] that the applicant knew of the reference, [2] knew that it was material [3] and made a deliberate decision to withhold it." *Therasense, Inc. v. Becton Dickinson & Co.,* 649 F.3d 1276, 1290 (Fed. Cir. 2011). The intent and materiality requirements are separate. The proof must be clear and convincing. "Proving that the applicant knew of a reference, should have known of its materiality and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* The *Therasense* court further recognized that it will be rare that direct evidence of deceptive intent will be proved and that "a district court may infer intent from indirect and circumstantial evidence." *Id.* Nevertheless, to meet that requirement "the clear and convincing evidence to establish specific intent to deceive" must be "the single most reasonable inference able to be drawn from the evidence." *Id.* The court further explained "indeed the evidence 'must be sufficient to require a finding of deceitful intent in the light of all the circumstances, hence when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.*

When applying this standard to a motion for summary judgment, the court must determine whether the proffered proof rises to the level of being clear and convincing taking into account the Federal Circuit standard that the inference that would support the claim must be the single most reasonable inference to be drawn from the evidence. For purposes of its Motion for Summary Judgment, Lutron does not challenge the required element of materiality, but focuses only on the element requiring clear and convincing evidence of specific intent. Lutron argues

that the Defendants cannot offer evidence at trial to meet the requirements to establish specific intent under this standard.

The parties acknowledged  at oral argument that the proof must be as to specific individuals and not to Lutron generally as a corporation.  To meet this requirement, the Defendants allege that Donald R. Mosebrook, the listed inventor of the '103 Patent, and Louis C. Dujmich, a registered patent attorney who prosecuted the '103 Patent, made deliberate decisions to withhold material prior art references from the Patent Office and did so with the specific intent to deceive.  The court will address each of these individuals separately.

### Alleged Deceit by Donald R. Mosebrook

In their affirmative defense and Counterclaim, the Defendants allege Mr. Mosebrook knew and failed to disclose material information with respect to a prior art device referred to as the Heath Zenith Reflex Switch (the "Reflex Device").  The Reflex Device is the commercial embodiment of U.S. Patent No. 5,239,205 (the "Hoffman Patent").  The patent discloses a switching system for controlling a power-load, consisting of a receiver switch which is connected to the power-load, such as a lamp, and a slave toggle switch which generates an electrical magnetic switching signal that changes the on and off state of the master switch.  The specifications of the '103 Patent include a description of the Reflex Device, but fail to refer to it by name or by identifying the Hoffman Patent.  Specifically at issue for the purposes of this Motion, is the following description from the specifications in the '103 Patent:

> In this prior art system, having the battery powered transmitting switch and the hardwired switch including a receiver, the hardwired receiving switch includes a whip antenna made from a piece of insulated wire which is allowed to dangle out

3

of the electrical box either outside the building wall or inside the wall.  In the case
where the whip antenna is allowed to dangle outside the wall, an unattractive,
aesthetically displeasing appearance is obtained.  In the case where the whip
antenna is allowed to dangle inside the wall, although hidden, the wire creates
reception and installation problems as well as a danger that the wire may become
shorted to other cables or grounds, presenting an electrical hazard or preventing
the antenna from working.

'103 Patent, 2:54-68.

The Defendants allege that this description of the Reflex Device fails to disclose that the

device came packaged with the antenna wound in a track in the receiver switch and, in that

configuration, the antenna would fit behind the device's faceplate, thus anticipating an element

of the '103 Patent that required the antenna be sized to fit within an area defined by the

faceplate.  The Defendants further argue that the instructions that they contend were shipped

with the Reflex Device explained that at installation, the switch should be installed initially with

the antenna coiled in the device and uncoiled to dangle only in the event that reception between

the transmitting slave switch and the receiving switch fails to produce a satisfactory signal.  The

Defendants continue that the instructions did not describe an option allowing the antenna to

dangle outside the wall.  The Defendants further argue that if these disclosures had been made,

the Patent Office would not have allowed the '103 Patent as issued.

In support of these arguments, the Defendants offer the deposition testimony of Mr.

Mosebrook acknowledging that he had a copy of the Reflex Device, that he was aware that the

antenna could be wound or recoiled around a track on the receiving switch, and thereby would

be hidden behind the faceplate, that he knew this information at the time he provided the

information about the Reflex Device to the patent attorney and when he reviewed the description

4

in the specifications drafted by the patent attorney.  The Defendants further argue that Mr.

Mosebrook "was knowledgeable regarding the antenna configuration in the Heath Zenith Switch

having seen the switch and instructions included with the switch during the research and

development that resulted in the '103 Patent.  Mosebrook Dep. Tr. 74 (1-2) ('We had a sample of

like a 'Heath Zenith Switch' that we had seen.')."  Dfts' Opp. Brief at 16 (Dkt. No. 455).[1]  The

deposition testimony, however, does not support the Defendants' assertion.  Mr. Mosebrook

testified that he had not seen the instructions for the Reflex Device until he saw it at his

deposition in 2005, long after the '103 Patent application had been submitted.  Mr. Mosebrook

explained that his understanding was that the antenna when coiled in the receiving switch device

did not work very well, and thus to be effective as an antenna, it had to be dangled either inside

or outside the wall.

      The Defendants argue that the reference to the antenna dangling outside the wall was a

misrepresentation.  They claim there was no suggestion in the instructions or use of the Reflex

Device that allowing the antenna to dangle outside the wall would ever be a suitable application.

They argue that this misrepresentation is a sufficient basis for finding inequitable conduct and

that summary judgment must be denied.   Although that argument is made in support of its

opposition to the Motion for Summary Judgment, the Defendants fail to allege the

misrepresentation, either in the affirmative defense, the Counterclaim or the supplemental

responses to  interrogatories describing their inequitable conduct claims.  (Dkt. No. 209, Aff.

---

[1] Defendants failed to number the pages of their opposition brief.  The page reference is
to the docket page number.

Def. ¶¶ 186-230, C.Cl. ¶¶ 97-146; Dkt. No. 457, Ex. 13, pp. 17-20).  The Defendants' prior allegations gave notice only of claimed omissions.  Lutron argues and the court accepts that the Defendants cannot now base their claim of inequitable conduct on a claimed misrepresentation they did not previously allege.

The  evidence from which the Defendants argue that the court should find sufficient evidence to infer a deliberate intent to mislead the Patent Office with respect to Mr. Mosebrook is summarized as follows.

1.   Mr. Mosebrook had a copy of the Reflex Device and was aware of how it worked.

2.   The application for the '103 Patent described the Reflex Device without identifying it specifically by name or identifying the Hoffman Patent.

3.   The '103 specifications describe the prior art reference, which is acknowledged to be the Reflex Device, as having an antenna that dangles inside the wall or dangles outside the wall, which may be dangerous or aesthetically displeasing.

4.   The description of the Reflex Device in the '103 specifications fails to disclose that the antenna, when coiled, is hidden behind the faceplate.

The evidence does not support a finding or inference that Mr. Mosebrook knew of the Hoffman Patent, had reviewed or read the Hoffman Patent or had seen the instructions for the installation and operation of the Reflex Device.  Mr. Mosebrook testified that the specific description of the Reflex Device in the '103 specifications was prepared by Mr. Dujmich, the patent attorney.  Although he reviewed the application, he did not have an explanation for the reason he failed to disclose the coiled antenna in the Reflex Device or explain why it was

described as being allowed to dangle outside the wall.  He did testify that upon testing the Reflex

Device, he found that it did not work very well with the antenna in a coiled position.

The Defendants acknowledge that they do not have direct evidence that Mr. Mosebrook

"made a deliberate decision to withhold a known material reference" from the Patent Office.

*See, e.g., Therasense,* 649 F. 3d at 1290.  The Defendants argue, however, that the evidence

meets the requirements to allow the court to infer from the indirect and circumstantial evidence

that he had the required specific intent.  Defendants acknowledge that to meet that requirement,

the inference of a deliberate decision by Mr. Mosebrook must be the "single most reasonable

inference able to be drawn from the evidence."  *See, Therasense,* 649 F.3d at 1290.  As noted,

the *Therasense* court provided that if there are "multiple reasonable inferences that may be

drawn, intent to deceive cannot be found."  *Id.*  Moreover, the Federal Circuit has further

explained that negligence, gross negligence and oversight are not sufficient to support the

required inference of specific intent.

In this case, the court concludes as to Mr. Mosebrook that multiple inferences can be

drawn from the evidence.  Mr. Mosebrook simply may have been careless or negligent in not

making sure that he had access to the Reflex Device instructions prior to disclosing how the

device worked.  The evidence also supports a reasonable inference that Mr. Mosebrook

concluded that the coiled antenna was not important because the device had such limited

operating range with the antenna coiled as to be ineffective.  Finally, the evidence supports an

inference that Mr. Mosebrook simply did not perceive the significance of the coiled device in the

overall patent applications.  For these reasons, the court GRANTS Lutron's Motion for Summary

Judgment on Inequitable Conduct to the extent it is based on the actions of Mr. Mosebrook.

**Alleged Deceit by Louis Dujmich**

In their affirmative defense and Counterclaim, the Defendants also allege that Louis

Dujmich made a deliberate decision to withhold material information from the Patent Office

during his prosecution of the '103 Patent.  In support of this allegation, the Defendants offer the

following evidence.  Mr. Dujmich was responsible for prosecuting three patent applications all in

the same patent family.  These patent applications included the '103 Patent Application, '239

Patent Application and the PCT Application.  The '103 Application, which is at issue here is a

divisional of the application for the '239 Patent.  The '239 Application was filed on February 7,

1996.  The PCT Application was filed almost a year later on February 2, 1997.  Finally, the '103

Application, separating it from the divisional application, was filed on January 26, 1998.  These

dates become important in understanding the information Mr. Dujmich had available to him at

the time he was prosecuting the '103 Patent.

On June 26, 1997, the European Patent Office ("EPO") issued an International Search

Report in connection with its review of the PCT Application.  That report identified U.S. Patent

No. 4,995,053 (the "Simpson Patent") and the Hoffman Patent as prior art references relevant to

the patentability of several claims made in Claim 19 of the PCT Patent.  Claim 19 of the PCT

Application eventually became Claim 1 of the '103 Patent which Lutron alleges in this action is

being infringed by the Defendants.  The Search Report was received by Mr. Dujmich's firm on

June 30, 1997, approximately 6 months before the '103 Patent Application was submitted.

Notwithstanding the fact that the Search Report included references to the Simpson and Hoffman Patents, Mr. Dujmich did not provide those to the Patent Office as references in the '103 Application.

Approximately a year later, on May 29, 1998, the EPO issued a PCT International Preliminary Examination Report.  The report stated that Claim 19 (eventually Claim 1 of the '103 Patent) lacked both novelty and inventive step.  In support, the report cited the Hoffman Patent.  The report was faxed to Mr. Dujmich's firm on July 10, 1998 by the European patent attorneys who were prosecuting the PCT Application.  Mr. Dujmich testified that he received the report via fax on that same date.   In the Examination Report, the EPO rejected Claim 19 as not novel based on the Hoffman Patent.  Mr. Dujmich did not submit the Hoffman Patent to the Patent Office  in connection with the '103 Application, notwithstanding having it called to his attention by the report.  Mr. Dujmich testified that he could not recall why he did not disclose the Hoffman Patent to the Patent Office.

On December 21, 1998, a little over a month before the '103 Patent Application was submitted, the EPO examiner issued an Official Action on the PCT Application.  The Official Action indicated that Claim 19 of the PCT Application lacked both novelty and inventive step.  The EPO Official Action was received by Mr. Dujmich and required him to consult with Lutron to decide how to respond.  Again, the Hoffman Patent was listed in support of this determination.

Finally, on May 19, 1999, after the '103 Application has been submitted, but prior to the '103 Patent issuing, the EPO Application was amended and Claim 19 was narrowed in scope to overcome the rejection based on the Hoffman Patent.  Mr. Dujmich was directly involved in the

amendments to the EPO Application.  He nevertheless did not bring the Hoffman Patent to the attention of the Patent Office in connection with the '103 Application.

The Defendants argue that the evidence is sufficient to support an inference that Mr. Dujmich knew about the Hoffman Patent and that the Hoffman Patent contained information that the EPO examiner found to be relevant and, in fact, a prior art reference to the same invention that is claimed in the '103 Patent Application.  The specifications for the Hoffman Patent provide that if the signal from the slave switch to the master switch is not satisfactory "the antenna on the master switch should be removed from its track and positioned inside the wall so that it hangs down.  This will increase the range of the master switch and allow it to turn on the light more readily."  Hoffman Patent, 10:32-38.  The Defendants argue that the evidence supports that Mr. Dujmich knew both that the Hoffman Patent was relevant to the '103 Application and that this information, together with the his knowledge of the EPO action, is sufficient to infer that Mr. Dujmich knew the Hoffman reference was material to the prosecution of the '103 Application.

To meet the requirements to prove inequitable conduct, however, the Defendants must offer evidence sufficient to infer clearly and convincingly that Mr. Dujmich made a deliberate decision to withhold material information.  In support of its Motion for Summary Judgment, Lutron argues that the evidence presented above is not sufficient to provide direct evidence or circumstantial evidence sufficient to show by clear and convincing evidence that Mr. Dujmich had the required intent.  Lutron argues further that Mr. Dujmich testified that while it is his usual practice to provide references to the Patent Office, his only explanation for not providing the

Hoffman references was oversight.  In *1ˢᵗ Media, LLC v. Electronic Arts, Inc.,* 694 F.3d 1367

(Fed. Cir. 2012), the Court found that it is not enough to argue "carelessness, lack of attention,

poor docketing or cross-referencing or anything else that might be considered negligent or even

grossly negligent.  To sustain a charge of inequitable conduct 'clear and convincing evidence

must show that the applicant made a deliberate decision to withhold a known material

reference.'" 694 F.3d at 1375 (citing *Molins PLC v. Textron, Inc.,* 48 F.3d at 1181).  In *1ˢᵗ*

*Media*, the Federal Circuit reversed the trial court's finding of inequitable conduct, concluding

that the evidence was inadequate to sustain the burden.  In summarizing its decision, the court

listed the following evidence as being insufficient to show a deliberate intent to deceive: the

applicant, or prosecuting patent attorney  "(1) knew of the references, (2) may have known they

were material . . ., and (3) did not inform the Patent Office of them.  But this is not enough as

*Therasense* made clear, a defendant must prove that an applicant (1) 'knew of the reference,' (2)

'knew it was material,' and (3) 'made a deliberate decision to withhold it.'"  694 F.3d at 1376-

77.  (Citing *Therasense*, 649 F.3d at 1290).  Lutron argues that under this standard the evidence

is not sufficient to allow an inference that Mr. Dujmich deliberately intended to deceive the

Patent Office.

      The *1ˢᵗ Media* case, however, was before the Federal Circuit on a complete record and

decision by the trial court.  The question here is whether, before any evidence has been presented

at trial, the evidence presented is sufficient to allow an inference under the clear and convincing

standard that Mr. Dujmich formed such an intent.  Mr. Dujmich's explanation appears to rest

primarily on his statement that he does not remember why he did not disclose Hoffman as a prior

art reference.  Mr. Dujmich testified that his usual practice was to provide the Patent Office with

all relevant prior art references and that the failure to provide the Hoffman Patent must have

been an oversight.  Absent the ability to judge Mr. Dujmich's credibility and without additional

details, a material question of fact remains as to whether or not Mr. Dujmich's explanation

should be accepted.  Without judging Mr. Dujmich's credibility, the court must find that

repeated references to the Hoffman Patent, over a two-year period, prior to the issuance of the

'103 Application raises a serious question as to whether the conduct can be viewed credibly as

simply an oversight.  Moreover, the information was not simply a reference to the Hoffman

Patent, but an Official Action by the EPO requiring the European application to be narrowed on

the very issue of novelty that was being claimed in the '103 Patent Application.  Based on this

information, the court concludes that Lutron's Motion for Summary Judgment must be DENIED

as to Mr. Dujmich.  Sufficient evidence has been presented for the case to proceed to trial, at

which time the court can hear additional evidence and judge the credibility of Mr. Dujmich's

testimony and his explanations.

DATED this 9th day of May, 2013

BY THE COURT:

Clark Waddoups
United States District Judge

12